And the next case is Title Max v. Northington and Wilber. And Mr. Walker should be here for Title Max. Mr. LaGuire for both Northington and Wilber. And Mr. Walker, you may begin when you're ready. Thank you. Before you begin, can we assume that Title Max's appeal from Northington's Chapter 13 case is moot? Yes, Judge Wilson. In fact, that's just the way I was going to begin the argument by letting the court know that both parties are in agreement that that appeal has been rendered moot. And we both have asked that the lower court decisions be vacated and the appeal dismissed. So we're just here asking Wilber? Yes, that's correct. Good morning, Your Honors, and may it please the Court. My name is Stuart Walker, and I'm here on behalf of Title Max in the appeal in Case 17-468 against Gustavius Wilson. Under Georgia law, a person who enters into a title pawn transaction exchanges title to his car in exchange for a nonrecourse advance of funds, which matures in 30 days from its extension. Can I ask you a question? And I don't want to cause you to flip the order of your argument, but it sounds like you're about to sort of launch off into the merits of the argument. And would you mind if we dealt with the res judicata piece first? Sure. And I've just got – I'll just confess, I've got some genuine questions about how this res judicata thing works. As I understand, the Bankruptcy Rule 3015-F, if I'm reading correctly, requires that you lodge an objection to confirmation of a plan before the confirmation is consummated, right? That's correct. So you filed your motion for relief from the stay before confirmation. That's correct. Why in the briefing is there this analogy, which I found a little odd, to Rule 59, which is a post-judgment motion when, in fact, you filed something at least pre-confirmation? And I don't know, frankly, what it takes for something to be a valid objection under 3015-F. Did the motion for relief from stay qualify without analogy to Rule 59? It did, Your Honor. Our position is that the motion that we filed on January the 8th, that was the motion for relief from stay, itself constituted an objection to the terms of the proposed plan, for the reason that the two principal arguments in the motion for relief from stay are the very same arguments that would have been raised in something called an objection to the plan. Well, I'm a little confused. I thought, I don't understand the rest judicata argument. Doesn't rest judicata apply to previously litigated cases? How does it even apply in this case? Well, Your Honor, it's our position that it does not apply in this case for a number of reasons. Number one, typically, so 1327A is the bankruptcy code provision that the court relied upon. That's a codification of rest judicata principles. Of course, one of the required elements of any rest judicata analysis is a final judgment on the merits. In this case, our position is that at the confirmation hearing that was held on January the 21st, the court indicated that the plan was confirmed or would be confirmed, but no confirmation order was, in fact, entered in the case until February the 9th. Now, under Bankruptcy Rule 9021, an order is effective from the date of its entry. It's our position that the confirmation, the operative date of confirmation was February the 9th. At that time, there was no, we were, we had a hearing on our motion for relief from stay on February the 2nd, one week before the confirmation order was entered. We were in court in front of the bankruptcy judge arguing the merits of our opposition to the plan before the plan had been confirmed. There was no final judgment as to the confirmation order at that time. If I could answer Judge Newsom's question about the maybe perceived strain analogy to Rule 59. The reason we made that argument, Your Honor, is because we filed a motion for relief on January the 8th. We argued it at a hearing on February the 2nd. The court entered a confirmation order right in the middle of our briefing schedule on February the 9th. So, we filed our post-hearing briefs after the confirmation order had been entered. So, it's our position that essentially what we were doing at that point is arguing that the court reverse course, undo the confirmation order because we thought it had legal defects. So, in a sense, although our motion was filed well before confirmation order was entered. So, Russ Giudicata can apply to motions filed in the same case?  I don't believe it can. And we cited in our brief at least one or maybe more Supreme Court decisions, United States Supreme Court decisions that make that very point. That typically those are to bar collateral attacks and subsequent proceedings where you have future litigation trying to unwind previously litigated to a full merits judgment. And that simply doesn't happen when you pass. Do you think what happened here was maybe the confusion with a consolidation of both Northington and Wilbur? Could that be an explanation of the bankruptcy judge talking about Russ Giudicata or not? Because of the timing of that? It could have been, Your Honor. I'm not entirely sure. I know it's been kind of a challenge to handle both of these appeals given the various sequencing of events. And our arguments have been slightly different in each appeal. I think our strongest case happens to be in this case, the Wilbur appeal, where we were there before the court arguing the merits of our objection before the confirmation order was entered. And we think any tentative indication by the bankruptcy judge at the hearing on January the 21st was just that, interlocutory in nature. And so we were lodging and arguing a merits objection before there was a confirmation order. And for that reason, I think the race Giudicata argument is not sound. So let me, just to make sure I'm not confusing concepts, I was the one who introduced Russ Giudicata into the conversation, and maybe that was a misstep. But so setting aside Russ Giudicata and the baggage that comes with it, under 3015F, so what's the consequence under 3015F? And I'm asking you to teach me here because I don't know. 3015F of not filing an objection to the plan before confirmation, what's the consequence? I think the consequence. Forever barred? Yeah, you're not entitled to come back later and make an objection. So then a lot rides, I guess, on whether your motion for relief from the stay constitutes an objection under 3015F, setting Russ Giudicata aside. We agree with that. Can you just tell me, like, what does 3015F require? You said that it was the same sort of substance of the argument that we're making now, made the same two points that we're making now. Are there any bells and whistles that are required to make something a 3015F objection? I don't think so, Your Honor. I mean, I think any objection to the plan as proposed, for example, if you disagree with the value of the collateral that's listed in the debtor's schedule, if you disagree with the value of the claim, if there's some reason you think I'm not going to sit by and let this plan be confirmed without hearing from me, I think that qualifies. It's my understanding of all that's required. My position is that in our motion for relief from stay, we said two relevant things. We said that as of December the 29th, Wilbur had not redeemed in full in compliance with Georgia law the full value of his Pond automobile. And as a result of that, that was number one. And number two, our position was that piece of property is no longer property of the estate because as a matter of Georgia law, he's been fully divested of any property interest. Those twin arguments would have been the centerpiece of any objection to plan confirmation. And the fact that they were litigated in the context of a motion for relief, in our view, does not change the substance of what we were asking the court to do. And, in fact, we filed a Rule 28J letter back this spring to bring to the court's attention a decision called NRA Holt, which was a Northern District Bankruptcy Court decision from March of this year. And if you go back and look at that case, it arose in precisely this context. The creditor filed a motion for relief from stay to bring, to tee up the issue to the bankruptcy court that the failure of the debtor in that case to redeem the automobile in full by the extended 60-day timeline rendered it not property of the estate. And the bankruptcy court agreed with that argument, granted relief. Section 1332B2 gives the bankruptcy court a lot of discretion to modify the rights of the holders of secured claims, doesn't it? Bankruptcy court is a court of equity. And the way I read this statute, whatever rights the creditor has can be modified by the bankruptcy court. 1322B2 does confer a general right on debtors to modify claims. It says secured claims or unsecured claims. And I think the key to understanding the operation of that provision is we have to repair to the text of the statute. What is a claim? Well, claim is a defined term in the bankruptcy code. If you go to Section 101, 5A and 5B, the code defines claim to mean a right to payment. And our position is that as of December 29th, upon the failure to redeem in full the balance and redeem the automobile, Title Max had no right to payment. For starters, we never had a right to payment to an impersonal judgment against Mr. Wilber because one of the characteristics of a title bond transaction is it's a nonrecourse advancement of funds. But number two, more importantly, we didn't have a right to payment from the proceeds of the automobile because as of the 29th, as a matter of Georgia law, we owned it outright. Your point is we didn't have a claim, we had a car. We didn't have a claim. That's precisely right. And I think we made the point in our brief. We said it makes little sense to say that a person has a claim against property that he owns. And so for that matter, I think as a textual matter, I think faithful to the provision to B2 and the use of the word claim in the definitional section, I think the court went astray there because it didn't pay fidelity to the text of the statute. It's our position under that subsection. If there are no further questions, I'll reserve the balance of my time for rebuttal. All right. We'll hear from Mr. LaGuarre. Good morning, Your Honors. I'm Bryce LaGuarre. I represent Gustavius Wilber in this appeal. I guess we at least agree that the car that came into the estate was property that stayed upon filing and passed that. I think Title Max, what Title Max is asking you to do is to do the job of Congress and rewrite the code and jurisprudence that has been undue. That's been going on for 34 years since the Supreme Court decision in the Whiting Pools case, which defines what property the estate is. So let me ask you this, you know, since you're saying that the other side wants to rewrite the code. Which provision of the bankruptcy code are you relying on to suspend seemingly indefinitely the state law redemption period? I get it that 108, I think, suspends it for 60 days. Yes, sir. But beyond that, what provision of the code are you relying on? 1322. Because it says what? It allows the debtor to modify and cure defaults and modify the claims of the creditors. Modify the claims, right? So, I mean, this is, I think, what your opponent would say is beyond December 29th, we didn't have a claim anymore. So there's no work for 1322 to do. Well, the reason they say that is because they say that the property disappears out of the estate, which is established upon the commencement of the filing of the case. And they're saying that after 60 days, under state law, which is superseded by the federal law, but they're saying that the state law can come in and snatch this car out of the estate away from the, in Chapter 7 cases, away from creditors, away from the debtor in the case of Chapter 13. Well, so, I mean, I guess it's true to a certain extent that the federal law supersedes the state, but it seems like there are scads of cases saying that as to the definition of the property interest within the estate, that's a function of state law. The definition of property interest is a function of state law. That's what happens when the case is filed under 541, the property, the case is commenced, and the estate is established at that moment in time. After that, what happens to the property and how the property is treated in the bankruptcy code is subject to the bankruptcy code, subject to federal law. The redemption statute is in conflict with the federal law, and therefore, the federal law supersedes that statute. So once you come into the sort of code land, we'll say there's no residual room for state law to operate in the background. I don't know that in any case there would not be residual room for state law to operate, but once, in the case of property of the estate, when the estate is created, then after that, state law has no bearing on it after the commencement of the case, once that's determined. And is there any distinction between a case like this where you've got – I keep calling this in my own head a snapback provision, some sort of operation of law provision, distinction between a case like that and a case where a creditor does something affirmatively to kind of claw the property out of the estate? Here, I guess the other side says, well, it's just sort of a function of state law, and magic happens, and it leaves the estate. Is there a distinction between an automatic kind of case like this and a sort of an affirmative conduct case? Well, I'm not – nothing immediately comes to mind about an affirmative conduct case, except in situations where in motions for relief from the state where the creditor is taking the property out of the state for statutory reasons, like it's not necessary for the effective reorganization or conduct of the debtor, whatever the debtor's conduct would be, that the statute would allow that that property, based on representation to the court, and then the court rules that the property can be taken out of the state after notice in a hearing. But as far as the creditor just affirmatively walking in and taking something out of the estate, I don't know of any provision that would allow for that. This provision, you know, there's some comparison to if it had been a different type of secured agreement where the car was repossessed prior to the bankruptcy being filed and to whether that is still property of the state and whether the debtor's right to possession. A lot of those issues aren't relevant to this type of case, but there are some ways that you can compare some of those kinds of cases. As far, I never did really understand the issue of Title Max saying they don't have a claim, and I understand what he's reading in Section 101. But the, I mean, they filed a claim, I think, in this case and amended it, if I'm not mistaken. But the fact is that the definition of claim has been construed to be very broad and would include this type of creditor. Obviously, they had a claim at the beginning because they had nothing but a secured interest in a car. And the debtor had ownership, possession, and title and a right to redemption. Did Title Max, and I can ask them too, but did they file a proof of claim after the redemption period had expired? I would have to look at the date on their proof of claim. I don't recall. And would that be some indication that they still thought it was a claim instead of a car? I guess that's what I'm kind of asking. Well, they may say that even if they filed, whether they filed it before or after the redemption period, that they filed it as an abundance of precaution in order to not be late on the filing of claim because there are consequences. In our district, they're really not, but there are consequences to the late filing of a claim. But a secured claim would be paid even if they had filed it late. But I understand, and they may have made a note. I don't know whether they made that note in the Northington or the Wilbur case that may have been doing just that. Yeah, I couldn't remember the chronology of the two cases. Yeah, so I don't know that that really matters. But if it matters to the court, I can get the date. No, no, no, it's fine. We can check it. The court brought up res judicata. I didn't really like that issue in this case. I think it's good for my client. I was going to mention it in the argument. The order of things were kind of unusual in this case. But in bankruptcy, bankruptcy is like streamlined times, not like a civil case in federal or state court where it might take a very long time to get to a conclusion. In bankruptcy, we were in four months. You have a confirmation order from the time of filing. And because of that timeline, there are certain rules. In a civil case, the Rule 59 motion that you referred to would have had to have been filed after the order was entered, post-order. In the bankruptcy case, there's a specific statute, as you pointed out, in 3015, that you have to object to confirmation. And there are consequences for not objecting. And there's a bankruptcy rule, and I looked for it. I couldn't find it. It may be a local rule that you can't ask for more than one type of relief in a motion. So they couldn't file a motion for relief and an objection to confirmation in the same motion. So maybe I'm off base here, but that actually matters to me, whether their motion for relief from the stay constitutes a valid objection under 3015. You guys can tell me why that shouldn't matter to me. But for what we're calling the res judicata argument, it actually does matter to me. Yes. I couldn't tell it. I thought you were about to say, I've never really liked this argument. It's good for my client. But their motion was good enough to constitute an objection. But now it sounds like you do dispute that their motion was good enough. I just don't think that in bankruptcy you can file an objection. You have to bring the matter to the court's attention. The motion is filed and the motion has a document on the front of the motion that says we filed this motion. You need a lawyer if you want to object to it. We're going to have a hearing on, I guess he said, February 2nd to appear there. All right. If his issues, if Title Max issues are confirmation related, they need to be there on January 21st, arguing that these issues are something that you can't confirm the case because today there's no property of the estate. Or we don't have a, there's no claim. Or whatever the issues are. That's what we're here today arguing. But they didn't bring it to the attention of the court. Filing the document on this streamlined time schedule doesn't bring it to the attention of the court. The court is not there to review motions for relief at the time of confirmation because, and it makes sense, generally a motion for relief is not a confirmation related issue, generally. In this case, it was. In this case, it would have been a good idea to have brought to the court's attention. It would have been a good idea to file a 3015 motion objecting to the confirmation. But that's not what was done. And the court was unaware of it. Now, going past that, I don't know that the court. But the motion itself set out the reasons why they wanted relief, right? Yes. So it's the equivalent of an objection. They could have changed the title of it and made it a 3015 motion and not had to change anything else other than the request for the relief. The body of it. That was exactly what they needed for an objection to confirmation, in my opinion. Yes. So that. I'm sorry, Judge Moreno. Go ahead. That just seems awfully formalistic to me that if you change the title on the piece of paper. I agree. And that's not really. That's not what the law is about making. I know we're not supposed to have things where the title of it is controlled and it doesn't. But I think because of the streamlined method of the bankruptcy court that you have to get it to the court's attention. And it wasn't my responsibility to bring it to the court's attention. They did in the body of it. All you have to do is read it. Well, in the sense that it's in the court's attention because it's in the electronic file over there. Yes. In the sense that the court's reviewing, not reviewing contested matters while they're going through the confirmation process. The court wouldn't have seen that unless he just happened to run across, hey, there's a motion for relief. But he would have said, he could have said a motion for relief. That's unrelated to a confirmation generally. So it wouldn't have been reviewed. I think because there's a statute and a rule on it that you have to bring it to the attention. So we could still say the doctrine of res judicata does not bar Title Max from objecting to the confirmed plan, right? We could say that. And you could still win based upon something else, right? Well, yes. I didn't think that the res judicata was my strong – I didn't even want to argue the res judicata. The judge in his order, the bankruptcy judge in his order addressed every issue as if it were a confirmation objection and ruled against Title Max on the merits. And then said, and res judicata bars them from objecting. Now, I didn't – I don't know and I don't remember. I didn't look back to see if I argued res judicata. He may have brought it up at some point. I think he did at the initial hearing. And I thought that the merits of the case were where the court should go. And the court did go. And that was the basis of my argument was on the merits of the case and the bankruptcy and the district court. And I think the merits of the case is where probably this court is going to go. And I don't know if the way the res judicata issue came up in its statute under 1327, if the court wants to use this kind of unique set of facts to make law on the – on 1327. There's been a lot because I don't know if there was some issue about whether you could object – whether res judicata would apply on the same hearing. This is – this is under 1327 where the confirmation binds all parties. That's, I guess, a codification of res judicata, so to speak. But – I'm not aware of any authority that where res judicata would apply in the same case. Well, in the – I don't know if it's a good example, but under the Espinosa – U.S. Supreme Court decision in Espinosa where I think that came up as a – late in the case or some point in the case under student loans where the court then came in and said, nope, you're bound by the confirmed plan. It's res judicata, so to speak. I don't know if they used those words, but they – it was – the student loan did not object. And they – there was a – there was a provision in the plan that would not have been confirmed if the judge had looked at it. And then they – the judge said later, well, you're bound by the confirmed plan. It said right here you're going to be discharged. The debt will be discharged even though it's non-dischargeable. And the – so the court applied it in that instance. Help me out. I'm still concerned about the fact that the bankruptcy state's property rights are defined by state law, right? You agree with that, obviously. Well, the debtor's interest in the property is defined by state law. Then the bankruptcy takes over. And the arguments that your opponent makes regarding Georgia law – help me out again with that. It seems to me that Georgia law is pretty clear as to – It is. And if we weren't in federal court, they would have had that car and there would have been no recourse that Mr. Wilbur would have had. The bankruptcy stepped in and the Georgia law says there's an interest in this car. He owns it. He has possession of it. He has a title. Even if the time had expired. If the time had expired? Is that what you're asking, Your Honor? If the time had expired, then it would not have been property of the estate. But isn't that this case? I'm sorry. It did not expire. We filed before the redemption period was over. That was different with the Northington case. No, I think both cases. Both were the same. Yeah, both cases they were filed before the 30-day redemption period was up. Congress spoke to this in 541, which is the property of the estate. So the property of the estate was the vehicle and the title? Vehicle, the ownership title, and the whole bundle of rights, which would include possession, yes, and the right of redemption.  Title Max kept the title. Title Max had the title. And in 541B8, where Congress stated that in situations where there's a title, where there's a, I'm going to paraphrase, where there's a pawn shop receives a property that's not a title, and there's not any redemption prior to filing, or there's not any. What was on the Chapter 13 petition when you list your assets? Yes, sir. The car was listed. Was the title listed as well? No, sir, just the car. That was the, they bundled together as one asset. And the right of redemption may have been a separate asset, but we didn't need that because he had possession and ownership of the car. If all he had had, for example, a car had been repossessed, particularly in Alabama where the law is different here, all he would have had would have been the redemption. He would have had to have listed the redemption right as a asset. And I'm sorry, I misspoke. Of course you filed your bankruptcy petition before the redemption period expired. I thought what you were saying is that you had made some effort to redeem the vehicle. Oh, well, we believe that the Chapter 13 is a redemption. The filing of a Chapter 13 is a redemption under what there are some cases of fine conflicts in 108 and 1322. And they say that, well, 108 is a general provision, 1322 specific provision, so it prevails. And when there's a conflict, the other courts say, well, there's really not a conflict because he has the redemption period. And within that redemption time, he filed a plan that said we're going to pay for it. And then under 1322, he's able to cure the default and pay for that over. What do we do with all those cases that are in conflict? Well. Bankruptcy cases. There are in conflict. Well, there's really, you know, there's two sides. That's why we're here. Unfortunately, the ones that don't deal with title palms are, I think, the debtors are better represented generally. And the cases are better because they're dealing with more expensive property like redemption rights and real estate and that sort of thing. And the debtor cases, they just, you read the cases and they're just not very well researched. When they just go in and say, well, section 108 says 60 days. That's it. That's all. And the property leaves the estate. And like some cases, they don't even bring up the Whiting Pools case. And there's nowhere in the code that says property can't leave the estate. But as I was pointing out in 108, I mean 541B8, that particular section, which deals specifically with palm shops and property that is in the possession of the palm shop, where they say that property, if it's not redeemed according to state law prior to the bankruptcy or under 108, it's not property of the state. So Congress recognized that property can come out. Here's where we're going to allow it to come out of the estate. So they knew how to do that. They knew what to do. They could, what TitleMax wants you to do is to say, well, even if there's a title and they've got the car, they want you to say B8 doesn't mean anything because if it includes these items and includes everything else, then you've rewritten the law. That's not what they meant. Can I – I've asked Judge Wilson's indulgence to ask just one more quickie. Can you just comment for me – there's a case, an 11th Circuit case called N. Ray Smith, which is – it's a mortgage case and the default occurred pre-petition. So I get it that it's not on point. But a lot of the language in that case seems contrary to the position that you're – it says things like property rights of a debtor in a bankruptcy state are defined by state law and that the right of redemption cannot be modified under a Chapter 13 plan but must be exercised as dictated under state law. Those two things just gave me some pause about your position. That case is an Alabama case and Alabama, after the foreclosure of a piece of property, the debtor has a bare right of redemption, I think, for one year to go in and pay cash for the property. This has now been codified. Smith is – if that happens under bankruptcy law, the hammer falls on the foreclosure, there's no longer anything available. But in that case, they had to get to a point, I think – I read the case. I've read it several times. They had to get to a point where they said, you know, this type of right of redemption is very fragile. There's not much there. They have nothing. They don't have ownership. They don't have any rights in the property at all because it has passed as of the date of the foreclosure, when that hammer fell on the foreclosure, and they have no rights left. And so except for this statutory right of redemption – and there's some wording I saw about how that was worded. It's not – I wish I could remember now. That particular statute in Alabama isn't a great deal of rights to the debtor. In fact, it may say it doesn't really give rights to the debtor other than this right in a year to go back and get it, and then it has to be cashed. So they had to get – I think the court had to get to the point to say, well, no, foreclosures mean something. We can't let debtors come in 12 months after someone else bought the property and then pay the debt off through Chapter 13. Got it. Okay, thank you. We'll hear from Mr. Walker again. Just a handful of points, if I may. To start with, I was startled by this statement by my colleague on the other side. If we weren't in federal court, Title Max would have the car. That is exactly the kind of disparity that the Supreme Court case in Butner said should not be allowed. And that's, of course, the case where they said we look strictly to state law to determine the existence and extent of a debtor's property interest in property. Wait a minute. I don't understand. There wouldn't be no – if we were in state court, there would be no Chapter 13 petition. That's right. And let me explain, Your Honor, what I mean. He's saying that because it's in bankruptcy, this divestment provision of the Georgia Title Pond Statute has no application. When what it says is there's an automatic extinguishment of the debtor's interest in the property and an automatic forfeiture. It would have an application if Title Max had exercised its rights before the bankruptcy petition was filed, right? It would, and it would similarly have full effect, our position is, in the bankruptcy proceeding after the right of redemption period expired. That automatic forfeiture and automatic extinguishment provision should be given the same effect under state law regardless of whether you're in bankruptcy or not. And that's the teaching of the Supreme Court's decision in the Butner case. What it says is – The whole reason behind Chapter 13, to permit debtors who are in trouble financially and their creditors who are bringing – that's why you have Chapter 13 petition, to protect you from your creditors. Well, there's no overriding federal rule of preemption in bankruptcy that would preempt state law across the board. State law has operation, I think, as you mentioned, it has residual effect after the filing of a bankruptcy petition. Our position here is that the bankruptcy estate is not a one-way ratchet, right? Property doesn't come into the estate at the day of the commencement. And then there are provisions in the bankruptcy code that say if you have additions to property following the petition date, those come to the bankruptcy estate. And so if that's the case, we know that the bankruptcy estate is not a static concept. And so it should work just the reverse when state law dictates that a debtor loses his or her state law interest in a piece of property. It can come out of the estate. Now, N. Ray Smith is different from this one, isn't it? Debtors in that case had their title extinguished at a foreclosure sale. That's correct. That is a difference. In our view, the fact that they were divested of title pre-petition does not distinguish the case. In our view, what matters is that in that case, as in ours, by the time the confirmation order was entered, the debtor had no title to the property. In that case, it was lost pre-petition. In our case, the interest was lost post-petition but pre-confirmation. And similarly, both debtors in Smith and here retained a state law-created statutory right of redemption that was not timely exercised in strict compliance with the requirements of state law. And so from our perspective, the fact that it was foreclosure and the fact that title was divested pre-petition is not the relevant distinction. So what does Title Max really want here? It wants the car? It wants the car. But you still get all of your money over the life of the plan, right? Well, Title Max is not in the business of secured lending on automobiles. It's in the title pawn business. And so what it does is it extends credit. And if it's repaid in full, then it releases the title. The lien is gone. The person gets the car back. If it's not, they get the car. That's the only recourse they have. Tax is getting paid in full. It's just going to take a little longer. And that's not the bargain that we struck, Your Honor, in the contract and, frankly, in the General Assembly's legislature on the Georgia title pawn provision. That's not the business we're in. And every day that we have to wait on another monthly installment is a risk we face of not being paid. That's not a risk we face if our interests are given effect under 44. I'm sorry. No, no, no, please. I didn't mean to stop you by inhaling. I've been there. I've been at the podium. You did the right thing, but I didn't mean to stop you. All I was going to do is cite the statutory provision. You have it in the briefs. I don't need to say it. So when the courts have said, the Supreme Court, our court, other courts have said that property interests in a bankruptcy estate are defined by state law. What sorts of property interests have been at stake? I just can't recall all of the cases, but what sorts of interests are we talking about? Here your position is, you know, sort of the definition of this thing as your car or his car. It could be title to a bank account, title to a certificate of deposit, title to a mobile home, title to a piece of equipment. I mean, it can be any number of things, as you might imagine. But I did want to touch on the point I think that you made earlier. You said, what's the difference in a snapback provision where it's an operation of law kind of thing versus an affirmative conduct kind of case? And there's a big distinction because when a creditor to get possession of property of the estate has to take an affirmative act, he can't do that because of the stay imposed by Section 362. And if you look at the text of that statute, it says that the commencement of a case creates a stay applicable to entities of, and then it itemizes all the things that people or entities cannot do, all the affirmative acts they cannot do unless they get relief from the bankruptcy court. What you'll notice if you look at the text of 362, it doesn't operate to stay automatic provisions of state law that are operative of their own force. It doesn't have operation in that field. So, I see that my time has expired, Your Honors. We'd respectfully ask that the judgment of the District Court be reversed. Thank you. Thank you, Counsel. Thank you, Honor.